**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| OHIO CASUALTY INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LIFEGUARD FIRE PROTECTION, INC., )<br>CAREY M. SMITH, MELBA D. SMITH, )<br>JAMIE PATTERSON, and KIM )<br>PATTERSON, )<br>)<br>Defendants, )<br>) | CIVIL ACTION NO.: 3:17-1658-JMC<br><br>**VERIFIED COMPLAINT** |

Plaintiff Ohio Casualty Insurance Company, complaining of Defendants Lifeguard Fire Protection, Inc.; Carey M. Smith; Melba D. Smith; Jamie Patterson; and Kim Patterson (collectively the "Indemnitors" or "Defendants"), alleges as follows:

**JURISDICTIONAL ALLEGATIONS**

1. Plaintiff Ohio Casualty Insurance Company ("Ohio Casualty") is a corporation organized under the laws of the State of Ohio, with a principal place of business in the State of Ohio. At all relevant times, Ohio Casualty has been authorized to issue payment and performance bonds in the State of South Carolina.

2. Upon information and belief, Defendant Lifeguard Fire Protection, Inc. ("Lifeguard") is a corporation organized under the laws of the State of South Carolina with a principal place of business in Lexington County, South Carolina.

3. Upon information and belief, Defendant Carey M. Smith is a citizen and resident of the State of South Carolina, with a residence in Lexington County, South Carolina.

1

4. Upon information and belief, Defendant Melba D. Smith is a citizen and resident of the State of South Carolina, with a residence in Lexington County, South Carolina.

5. Upon information and belief, Defendant Jamie Patterson is a citizen and resident of the State of South Carolina, with a residence in Lexington County, South Carolina.

6. Upon information and belief, Defendant Kim Patterson is a citizen and resident of the State of South Carolina, with a residence in Lexington County, South Carolina.

7. The Court has jurisdiction over this action under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and all Defendants.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391, in that one or more Defendants is subject to this Court's personal jurisdiction and that the subject matter of this lawsuit concerns contracts that were entered into in the State of South Carolina.

9. All conditions precedent to bringing this action have been met or waived.

## GENERAL ALLEGATIONS

10. As part of its business, Ohio Casualty acts as a licensed surety company that issues bonds on behalf of contractors referred to as "principals," which run in favor of the "obligees" named in the bonds. Ohio Casualty is licensed to do business as a surety in South Carolina.

11. Upon information and belief, Lifeguard is a contractor that provides labor, services, and materials for fire protection in South Carolina.

12. Lifeguard and the other Defendants requested that Ohio Casualty provide bonding services to Lifeguard.

13. As a condition of and in consideration for Ohio Casualty providing future bonds and/or bonding services for Lifeguard; Lifeguard, Carey M. Smith, Melba D. Smith, Jamie Patterson,

2

and Kim Patterson entered into and executed a General Agreement of Indemnity ("Indemnity Agreement") with Ohio Casualty on or about August 8, 2013. A fair and accurate copy of the Indemnity Agreement is attached as **Exhibit A** and incorporated by reference.

14. The Indemnity Agreement was signed and executed in the State of South Carolina.

15. All of the signatories to the Indemnity Agreement contain South Carolina notary acknowledgements.

16. Lifeguard executed the Indemnity Agreement.

17. Carey M. Smith executed the Indemnity Agreement.

18. Melba D. Smith executed the Indemnity Agreement.

19. Jamie Patterson executed the Indemnity Agreement.

20. Kim Patterson executed the Indemnity Agreement.

## THE PROJECTS

21. Lifeguard entered into a subcontract with a general contractor, Thompson Turner Construction, a division of Thompson Construction Group, Inc. ("Thompson"), to install fire protection systems at May River High School, Job 4-17-1334 ("May River Project").

22. Lifeguard also entered into a subcontract with Thompson to install fire protection systems at Goose Creek High School, Job 4-17-1332 ("Goose Creek Project") (hereinafter, the May River Project and Goose Creek Project shall be collectively referred to as the "Projects").

23. At the request of Lifeguard and/or the Indemnitors, and in reliance upon the Indemnity Agreement, Ohio Casualty, as surety, executed and furnished a performance bond number 18035635 for the May River Project on behalf of Lifeguard, as principal ("May River Bond"). A fair and accurate copy of the May River Bond is attached and incorporated as **Exhibit B**.

24. At the request of Lifeguard and/or the Indemnitors, and in reliance upon the Indemnity Agreement, Ohio Casualty, as surety, executed and furnished a performance bond number 18032961 for the Goose Creek Project on behalf of Lifeguard, as principal ("Goose Creek Bond") (hereinafter, the May River Bond and Goose Creek Bond shall be referred to collectively as the "Bonds"). A fair and accurate copy of the Goose Creek Bond is attached and incorporated as **Exhibit C**.

## PERFORMANCE-BOND CLAIMS

25. On or about December 18, 2015, Lifeguard gave notice of its voluntary default on the Projects to Thompson and Ohio Casualty, leaving the Projects unfinished. A fair and accurate copy of Lifeguard's default letter is attached and incorporated as **Exhibit D**.

26. Also on or about December 18, 2015, Thompson made claims on the Bonds against Ohio Casualty for completion of the Projects ("Performance-Bond Claims"). A fair and accurate copy of Thompson's Performance-Bond Claims is attached and incorporated as **Exhibit E**.

27. Pursuant to its obligations under the May River Bond, Ohio Casualty entered into a Takeover Agreement with Thompson and a Completion Agreement with International Fire Protection, Inc. ("Completion Contractor") to finish the May River Project.

28. The May River Project was completed by the Completion Contractor at a net cost to Ohio Casualty of $616,462.26.

29. Pursuant to its obligations under the Goose Creek Bond, Ohio Casualty entered into a Takeover Agreement with Thompson and a Completion Agreement with the Completion Contractor to finish the Goose Creek Project.

30. The Goose Creek Project was completed by the Completion Contractor at a net cost to Ohio Casualty of $30,979.17.

4

31. Ohio Casualty has expended funds in connection with investigating and responding to the potential losses described above.

32. On December 23, 2016, Ohio Casualty demanded that the Indemnitors reimburse Ohio Casualty for the $652,172.43 paid by Ohio Casualty relating to its handling of the Performance-Bond Claims ("Reimbursement Demand Letter").  A fair and accurate copy of the demand letter is attached and incorporated as **Exhibit F**.

33. The Reimbursement Demand Letter was made in accordance with the Indemnity Agreement.

34. The Indemnitors failed to reimburse Ohio Casualty in response to the Reimbursement Demand Letter.

35. The Indemnitors' defaults caused Ohio Casualty to hire legal counsel to investigate and respond to the Performance-Bond Claims.

36. To date, Ohio Casualty has paid $4,731.00 to its legal counsel, Shumaker, Loop & Kendrick, LLP, to investigate and respond to the Performance-Bond Claims.

37. On May 22, 2017, Ohio Casualty demanded that the Indemnitors post collateral security of $652,172.43 by May 31, 2017 in order to help secure Ohio Casualty as required by the Indemnity Agreement ("Collateral Security Demand Letter").  A fair and accurate copy of the demand letter is attached and incorporated as **Exhibit G**.

38. The Collateral Security Demand Letter was made in accordance with the Indemnity Agreement.

39. The Indemnitors failed and refused to post any collateral in response to the Collateral Security Demand Letter.  A fair and accurate copy of counsel for the indemnitors' response to the Collateral Security Demand Letter is attached and incorporated as **Exhibit H**.

## FURTHER ALLEGATIONS CONCERNING THE INDEMNITY AGREEMENT

40. The Indemnity Agreement provides:

> The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from any and all liability for losses, fees, costs and expenses of whatsoever kind or nature including, but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach of this Agreement..., court costs, counsel fees…and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur.:…(3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements; or (4) in enforcing any of the covenants and conditions of this Agreement or Other Agreements. [**Exhibit A**, ¶ 7].
>
> …
>
> If the Surety determines, in its sole judgment, that potential liability exists for losses and/or fees, costs and expenses for which the Indemnitors and Principals will be obliged to indemnify the Surety under the terms of this Agreement or Other Agreements, the Indemnitors and/or Principals shall deposit with the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has: (a) established or increased any reserve; (b) made any payments; or (c) received any notice of any claims therefor. [**Exhibit A**, ¶ 7].
>
> …
>
> In the event of any of the following: breach, default, or termination asserted by the obligee in any bond; any Principal's abandonment of the work or forfeiture of any contract covered by any Bond…then the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or under the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by the Bonds…to complete or arrange for the completion of the same, and the Indemnitors and Principals shall promptly, upon demand, pay to the Surety all losses, fees, costs and expenses so incurred. [**Exhibit A**, ¶ 10].

41. The Indemnitors' failure to perform pursuant to its subcontract with Thompson and voluntarily declaring default under the subcontract constitutes the Indemnitors' default under the Indemnity Agreement.

42. The Indemnitors' failure to reimburse Ohio Casualty for the amounts it incurred in resolving the Performance Bond Claims also constitutes the Indemnitors' breach of the Indemnity Agreement.

43. The Indemnitors' failure to post collateral in response to the Collateral Security Demand Letter also constitutes the Indemnitors' breach of the Indemnity Agreement.

44. In order to bring this lawsuit, Ohio Casualty has been compelled to retain legal services. It has agreed to pay the law firm for these legal services.

45. The Indemnity Agreement provides that Ohio Casualty may recover its attorneys' fees and consulting fees for prosecuting this action and in handling any matter relating to the Bonds.

46. Ohio Casualty is entitled to an award of attorneys' fees, and the Indemnitors are hereby notified of Ohio Casualty's intention to collect reasonable attorneys' fees.

## FIRST CAUSE OF ACTION
### (Breach of Contract/Specific Performance - Failure to Post Collateral Security)

47. Ohio Casualty re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Verified Complaint.

48. In the Indemnity Agreement, the Indemnitors agreed as follows:

> If the Surety determines, in its sole judgment, that potential liability exists for losses and/or fees, costs and expenses for which the Indemnitors and Principals will be obliged to indemnify the Surety under the terms of this Agreement or Other Agreements, the Indemnitors and/or Principals shall deposit with the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has: (a) established or increased any reserve; (b) made any payments; or (c) received any notice of any claims therefor. [**Exhibit A**, ¶ 7].

49. Ohio Casualty has complied with all of its duties under the Indemnity Agreement.

50. Ohio Casualty properly made demand upon the Indemnitors to post collateral security in the amount of $652,172.43. **Exhibit G**.

51. Despite demand, the Indemnitors have failed and refused to provide collateral security in the amount of $652,172.43 to secure against expenses incurred related to the Bonds and any payments made or to be made by Ohio Casualty under the Bonds, thereby breaching the Indemnitors' obligation to do so as set forth in the Indemnity Agreement.

52. Ohio Casualty, in accordance with the Indemnity Agreement, is entitled to be fully collateralized by the Indemnitors for Ohio Casualty's potential obligations under the Bonds.

53. Unless the relief of specific performance of the collateral-security provision is granted at this time, Ohio Casualty will not be adequately secured for its obligations under the Bonds and will suffer irreparable harm.

54. Ohio Casualty is entitled to an order of specific performance requiring the Indemnitors, individually and collectively, immediately to post collateral security in the amount of $652,172.43.

## SECOND CAUSE OF ACTION
### (Breach of Contract - Failure to Exonerate and to Indemnify)

55. Ohio Casualty re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Verified Complaint.

56. In the Indemnity Agreement, the Indemnitors agreed as follows:

> The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from any and all liability for losses, fees, costs and expenses of whatsoever kind or nature including, but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach of this Agreement..., court costs, counsel fees…and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur.:…(3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements; or

8

(4) in enforcing any of the covenants and conditions of this Agreement or Other Agreements. [**Exhibit A**, ¶ 7].

57. Ohio Casualty has made demand against the Indemnitors to exonerate and indemnify it against actual and potential losses in connection with the Bonds and in pursuing Ohio Casualty's rights under the Indemnity Agreement. **Exhibit F**.

58. Lifeguard has breached the Indemnity Agreement by failing and refusing to comply with its obligation to exonerate and indemnify Ohio Casualty.

59. Carey M. Smith has breached the Indemnity Agreement by failing and refusing to comply with its obligation to exonerate and indemnify Ohio Casualty.

60. Melba D. Smith has breached the Indemnity Agreement by failing and refusing to comply with its obligation to exonerate and indemnify Ohio Casualty.

61. Jamie Patterson has breached the Indemnity Agreement by failing and refusing to comply with its obligation to exonerate and indemnify Ohio Casualty.

62. Kim Patterson has breached the Indemnity Agreement by failing and refusing to comply with its obligation to exonerate and indemnify Ohio Casualty.

63. Ohio Casualty is entitled to recover from the Indemnitors the amount of $652,172.43 plus interest at the maximum allowable rate, in addition to the attorneys' fees and costs associated with bringing and maintaining this action, until paid in full.

WHEREFORE, Ohio Casualty Insurance Company prays the Court as follows:

1. That the Court order the Indemnitors to deposit with Ohio Casualty the sum of $652,172.43 in certified funds within five (5) days of this Court's Order, as security for Ohio Casualty's obligations on the Bonds and related expenses.

2. That the Court order the Indemnitors to, in the event they do not post $652,172.43 with Ohio Casualty within five (5) days of the Court's Order, provide within ten (10) days of the Court's Order property, liens, assignments, and security interests in property for the benefit of Ohio Casualty where the value of such property, liens, assignments, and security interests equals or exceeds $652,172.43.

3. That the Court enter a judgment against the Indemnitors, jointly and severally, in the amount of $652,172.43, plus interest at the maximum allowable rate from the earliest permissible date, until paid in full.

4. That the Court enter a judgment against the Indemnitors, jointly and severally, in an amount equal to the attorneys' fees and costs incurred by Ohio Casualty in pursuing this action.

5. That the costs of this action, including reasonable attorneys' fees, be taxed against the Indemnitors.

6. That the Court award Ohio Casualty prejudgment and post-judgment interest at the highest legal rates possible from the earliest date possible until paid in full.

7. That the Court grant such other and further relief as it deems just and proper.

This the 23rd day of June, 2017.

        s/ Megan M. Stacy
        Megan M. Stacy, SC Bar No. 102120
        Shumaker, Loop & Kendrick, LLP
        101 S. Tryon Street, Suite 2200
        Charlotte, NC  28280-0002
        Telephone:  (704) 375-0057
        Facsimile:  (704) 332-1197
        mstacy@slk-law.com
        *Attorney for Plaintiff*

        s/ William H. Sturges
        William H. Sturges, NC Bar No. 8524
        *Pro Hac Vice Admission Pending*
        Shumaker, Loop & Kendrick, LLP
        101 S. Tryon Street, Suite 2200
        Charlotte, NC  28280-0002
        Telephone:  (704) 375-0057
        Facsimile:  (704) 332-1197
        wsturges@slk-law.com
        *Attorney for Plaintiff*

STATE OF ~~Indiana~~ Indiana    **VERIFICATION**
COUNTY OF Johnson

**James Rumpf**, of Ohio Casualty Insurance Company, being first duly sworn, deposes and says: that he has read the foregoing **Verified Complaint,** that he knows the contents thereof, that the same is true of his own knowledge, except as to the matters therein stated on information and belief and, as to those matters, he believes them to be true.

_____
James Rumpf

Sworn to and subscribed before me
on this the 3 day of JUNE, 2017.

_____
Signature of Notary Public

CANDICE LYNN REESE
Printed Name of Notary Public

SEPT. 29, 2018
Date My Commission Expires

[SEAL] 
OFFICIAL SEAL
CANDICE LYNN REESE
NOTARY PUBLIC - INDIANA
JOHNSON COUNTY
My Comm. Expires 09/29/2018

12